UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ERNEST MONTGOMERY (#315014)**                              **CIVIL ACTION**

**VERSUS**

**KRISTEN THOMAS, ET AL.**                                   **NO. 17-0210-SDD-EWD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 12, 2018.

*/s/ Erin Wilder-Doomes*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ERNEST MONTGOMERY (#315014)**                              **CIVIL ACTION**

**VERSUS**

**KRISTEN THOMAS, ET AL.**                                   **NO. 17-0210-SDD-EWD**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are Defendants' Motion to Dismiss and Motion for Summary Judgment (R. Docs. 9 and 12) and the Plaintiff's Motion Requesting a Ruling on Exhaustion of Administrative Remedy Proceedings (R. Doc. 14).

*Pro se* Plaintiff, an inmate confined at the Elayn Hunt Correctional Center ("EHCC"), St. Gabriel, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against Social Worker Kristen Thomas, Social Worker James Dulaney, Major Brown, Program Manager Clara Hodas, Capt. Donald Johnson, Ass't Warden Boies and Lt. Jackson, alleging that Defendants violated his constitutional rights on January 21, 2015 by exhibiting deliberate indifference to his health and safety, specifically by placing him in a suicide cell with a top bunk notwithstanding his explicit threat that he would harm himself by jumping therefrom, which he thereafter did.

In his Complaint, Plaintiff alleges that on the evening of January 21, 2015, he was escorted to a suicide cell in response to his assertion that he was feeling suicidal. However, upon placement in the assigned cell, Plaintiff complained that he should not be placed therein because it had an upper bunk, because he feared that he would harm himself by jumping from the bunk, and because he had a history of jumping from the upper bunk in double-bunked cells. In response to Plaintiff's complaint, Defendants Jackson, Johnson and Brown were summoned to the tier,

whereupon Plaintiff explained his concerns regarding the cell. Defendant Johnson then instructed Defendant Jackson to contact a mental health worker, whereupon Defendant Kristen Thomas arrived at the tier. After Plaintiff again explained his concerns, Defendant Thomas advised Plaintiff that he would have to remain in the cell and that, if he hurt himself by jumping off of the bed, he would then be placed in 4-point restraints on "extreme" suicide watch. According to Plaintiff, he thereafter tried to sleep, but his "thoughts kept racing, telling [him] to hurt [him]self," and he began to hyperventilate. Finally, at around 4:00 or 5:00 a.m. the next morning, he jumped from the top bunk, landing on his knees and sustaining injury.

Addressing first Defendants' Motion for Summary Judgment, Defendants contend, relying upon the pleadings, a Statement of Uncontested Material Facts, certified copies of Plaintiff's pertinent administrative remedy proceedings, and the affidavits of Rhonda Z. Weldon and Linda S. Krol, that dismissal is appropriate in the first instance based upon the procedural argument that Plaintiff has failed to exhaust administrative remedies as mandated by 42 U.S.C. § 1997e.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict

in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

Upon a review of Plaintiff's pertinent administrative remedy proceedings, the Court finds that Defendants' motion should be denied.[1] In this regard, pursuant to 42 U.S.C. § 1997e, Plaintiff was required to exhaust administrative remedies available at the prison prior to commencing a civil action in this Court with respect to prison conditions.[2] This provision is mandatory and applies broadly to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S.

---

1  The Court finds that in addressing and resolving Defendants' Motion for Summary Judgment relative to the issue of exhaustion of administrative remedies, the Court has rendered moot Plaintiff's related Motion Requesting a Ruling on Exhaustion (R. Doc. 14).
2  42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until* such administrative remedies as are available are exhausted." (Emphasis added).

516, 532 (2002). Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures. *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). Specifically, not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" *Johnson v. Johnson*, *supra*, 385 F.3d at 516, *quoting Porter v. Nussle*, *supra*, 534 U.S. at 525. Thus, the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this intended purpose. *Id.*

Applying the foregoing standard, it appears that on January 7, 2015, approximately two weeks prior to the incident complained of, Plaintiff submitted an administrative grievance to prison officials wherein he complained of the specific risk referenced herein, *i.e.*, the risk associated with his being placed in a double-bunked suicide cell. Specifically, Plaintiff asserted in the referenced grievance:

> When I'm placed in CBB-tier …, which is the suicide tier, my thoughts stay racing with thoughts of jumping off of the top bunks in these suicide cells. I warn security. I warn mental health workers, because to be placed in a suicide cell with a top bunk is a great risk to my health and safety. I have already in the past jumped off of one of these top bunks in these suicide cells, injuring myself, and being suicidal, I should'nt [sic] be placed at this kind of risk.

*See* R. Doc. 12-3 at p. 2. It appears that this administrative grievance was thereafter fully exhausted through both steps of the 2-step prison administrative process and was finalized on or about September 13, 2016. *See id*. Notwithstanding, Defendants point to a second administrative grievance that Plaintiff submitted, this one *after* the incident and accident complained of herein, and Defendants assert that although Plaintiff completed the first step of the

administrative process in connection with that grievance, they have no record of Plaintiff proceeding to the second step thereof. Accordingly, Defendants contend that the administrative process was not completed relative to the second grievance and that Plaintiff's failure in this regard warrants dismissal of this proceeding.

The Court disagrees with Defendants' assertion. Specifically, pretermitting consideration of whether Plaintiff completed the second step of the administrative process in connection with his second grievance,[3] the Court finds that Plaintiff's first grievance, wherein he complained that his future placement in a suicide cell with a top bunk presented a serious risk of danger, adequately provided notice to prison officials of the basis for Plaintiff's claim in this proceeding and provided an opportunity to respond to the issue presented. Accordingly, the initial grievance provided fair notice to prison officials of the inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" *See Johnson v. Johnson*, *supra*. As such, the Court finds that Plaintiff has adequately exhausted his administrative remedies relative to this claim.

Turning to Defendants' Motion to Dismiss, Defendants first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of Plaintiff's claim for monetary damages asserted against Defendants in their official capacities. In this regard, Defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v.*

---

3    Plaintiff asserts in his response to Defendants' Motion for Summary Judgment that he did in fact attempt to proceed to the second step of the administrative process in connection with this second grievance but that "his paperwork and envelope must've been lost in the mailing system." *See* R. Doc. 14 at p. 2.

*Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, Plaintiff's claim asserted against Defendants in their official capacities for monetary damages is subject to dismissal. In contrast, Plaintiff's claim for monetary damages asserted against Defendants in their individual capacities remains theoretically viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id*. at 29.[4]

Turning to a consideration of Plaintiff's claims that are not subject to dismissal on jurisdictional grounds, Defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that Plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court addressed the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly, supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly, supra*. "A claim has facial

---

[4] Plaintiff includes a prayer for declaratory and injunctive relief in his Complaint, and the law is clear that a claim for declaratory and injunctive relief asserted against a state employee in an official capacity is not barred by the Eleventh Amendment because such a claim is not seen to be a claim asserted against the state. *See Will v. Michigan Department of State Police, supra*, 491 U.S. at 71 n. 10; 15 Am. Jur. 2d Civil Rights § 101. Notwithstanding, as addressed hereafter, the Court finds that Plaintiff's claim for such relief asserted against Defendants should be rejected.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id*. (citation omitted). Even a *pro se* complainant, however, must plead "factual matter" that permits the court to infer "more than the mere possibility of misconduct." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678. The court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678 (internal quotation marks omitted).

In response to Plaintiff's allegations, Defendants assert that they are entitled to qualified immunity in connection with Plaintiff's claims. Specifically, Defendants contend that Plaintiff's allegations are insufficient to establish that they have participated in any violation of Plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473

Fed. Appx. 398 (5th Cir. 2012). Taking the facts as alleged in the light most favorable to Plaintiff, the Court considers whether Defendants' conduct violated Plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-pronged analysis in a particular order – should not be "regarded as an inflexible requirement"). Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Saucier v. Katz, supra*, 194 U.S. at 201. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation that he confronted. *Id.* at 202. When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009), *citing McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*).

Undertaking the qualified immunity analysis with respect to Plaintiff's claims, the Court concludes that Defendants' Motion to Dismiss should be granted in part and denied in part. First, relative to Defendants Ronald Boies, Clara Hodas and James Dulaney, Plaintiff makes no factual allegations whatever in his Complaint as to these defendants and so fails to state a claim against them. In this regard, in order for a prison official to be found liable under § 1983, the official must be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be shown to be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano*

*v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

In responding to Defendants' Motion to Dismiss relative to Defendants Boies, Hodas and Dulaney, Plaintiff has asserted that (1) Defendant Hodas is the Ass't Mental Health Director at EHCC who responded in writing to Plaintiff's administrative grievance, (2) Defendant Dulaney is the Mental Health Director at EHCC and was notified verbally and in writing about Plaintiff's concerns, and (3) Defendant Boies is the Warden who was in charge of the suicide tier where Plaintiff was housed on the night of January 21, 2015. According to Plaintiff, these Defendants had supervisory authority over the provision of mental health care and/or over the suicide tier at EHCC on the night of the incident and had the authority to prevent the resulting harm. It is clear, however, that these Defendants were not present or personally involved in the determination made by security officers and the mental health worker on that date to retain Plaintiff in the suicide cell

with an upper bunk. Accordingly, the Court concludes that the mere supervisory authority of these defendants is not sufficient to support a claim asserted against them relative to the violation of Plaintiff's constitutional rights on that date. Further, to the extent that Plaintiff complains of the failure of these Defendants to respond to his verbal complaints and/or administrative grievances, the law is clear in this regard that Plaintiff does not have a right to have his complaints or grievances investigated, responded to or appropriately resolved. *See Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005). Accordingly, the Court concludes that these defendants are entitled to judgment herein, dismissing Plaintiff's claims asserted against them.

Turning to Plaintiff's claims asserted against the remaining Defendants, Chandra Jackson, Donald Johnson, and Ernest Brown, the Court concludes, although the issue is a close one, that Defendants' Motion to Dismiss should be denied at this time in connection with Plaintiff's claim of deliberate indifference. In this regard, in *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), the Supreme Court explained that to be deliberately indifferent to an inmate's needs in violation of the Eighth Amendment, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Therefore, to avoid liability, "[p]rison officials charged with deliberate indifference might show ... that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844. Furthermore, evidence that an official was aware of a substantial risk to inmate safety does not alone establish deliberate indifference. As the Supreme Court explained in *Farmer*, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*.

at 844.  The United States Court of Appeals for the Fifth Circuit has further observed that, "while ... the law is clearly established that jailers must take measures to prevent inmate suicides once they know of the suicide risk, we cannot say that the law is established with any clarity as to what those measures must be."  *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 328-29 (5th Cir. 1998), *quoting Rellergert v. Cape Girardeau Cty.*, 924 F.2d 794, 797 (8th Cir. 1991).  What is clear is that, even if an officer responds without the due care a reasonable person would use—such that the officer is only negligent—there will be no liability. *See Davidson v. Cannon, 474 U.S. 344, 347 (1986).*

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer v. Brennan, supra*, 511 U.S. at 842.  In the instant case, Plaintiff asserts that he explicitly informed Defendants of a likely future danger and further informed them that the risk was serious because he had previously sustained injury under similar circumstances.  The Court finds it possible that a fact-finder could conclude from this that Defendants were sufficiently apprised of a substantial risk of serious injury to Plaintiff's health or safety.  The next question then becomes whether Defendants' conduct in maintaining Plaintiff in the cell with an upper bunk was a reasonable response to the danger of which they were made aware.  Whereas Defendants assert that they were acting reasonably in this case because they were responding to Plaintiff's assertion of suicidal ideology by placing him a cell on the suicide tier at EHCC, the Court is not convinced that this ends the inquiry.  Specifically, whereas Defendants may have been responding reasonably to Plaintiff's threats of suicide, a question remains whether they were responding reasonably to his threat to harm himself if maintained in that cell, and also whether other

alternatives were reasonably available.[5]   The Court is mindful in this regard that prison officials are not the guarantors of inmate safety in all circumstances and that inmates are able to find ways to harm themselves despite efforts by prison officials to provide for their safety.  *See* R. Doc. 13 at p. 5 (where Plaintiff recounts other ways in which he has attempted to injure himself). Notwithstanding, the Court is unwilling to conclude at this stage of the proceedings that Defendants' decision to maintain Plaintiff in the referenced cell when faced with an explicit warning of likely future harm was in fact a reasonable response to the known risk.  *Cf., Adams v. Cain*, 2016 WL 616833 (M.D. La. Jan. 26, 2016), *and cases cited therein* (addressing liability in connection with the assignment of an inmate with a seizure disorder to an upper bunk notwithstanding knowledge of the potential for injury resulting from a fall).   Additional evidence may be available or may come to light in this case in connection with a properly supported motion for summary judgment that supports Defendant's contentions and reflects, for example and without limitation, that contrary to Plaintiff's assertions, there were no cells reasonably available on the suicide tier on the night of the incident that did not have upper bunks, that Defendants had reason to doubt or discount Plaintiff's assertions relative to likely impending harm, or that Plaintiff's ability to harm himself in the suicide cell was not appreciably increased by the presence of the upper bunk (in light of other available means, for example, pursuant to which he could have caused similar injury).   In addition, there may be evidence that potentially clarifies the division of authority between the Defendant security officers and the Defendant mental health officer on the suicide tier relative to who had authority/responsibility to make a final determination not to place

---

5   In this regard, Plaintiff asserts that there were cells available on the suicide tier that only had single bunks.

Plaintiff in a cell with an upper bunk. On a Motion to Dismiss pursuant to Rule 12(b)(6), however, the consideration of such evidence is not appropriate.

Finally, although Plaintiff has included a request for injunctive relief in his Complaint, seeking to compel prison officials to refrain from assigning him to a suicide cell with an upper bunk in the future, the Court finds that this aspect of Plaintiff's claim should be dismissed. Specifically, Plaintiff has not apparently been maintained under a suicide protocol on a permanent basis, and whereas it may be likely, considering his allegations of mental deficiencies, that he will be classified to such a cell in the future, the Court finds that the specific medical determinations that will accompany that classification are not easily subject to bright-line injunctive relief. To the contrary, Plaintiff's medical providers will be required to assess in each instance the degree of risk faced by Plaintiff and the appropriate means to address that risk. Accordingly, the Court finds it appropriate to defer those medical and security determinations to the prison administrators and providers who are best able to address same in each such instance. This aspect of Plaintiff's claim should therefore be dismissed.

To the extent that Plaintiff seeks to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court is authorized to decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims would substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, the Court concludes that any state law claims would potentially predominate over the federal claims arising under the Eighth and First Amendments to the United States Constitution. Accordingly, the Court recommends that supplemental jurisdiction be declined in connection with any potential state law

claims.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction in connection with any state law claims and that Plaintiff's Motion Requesting a Ruling on Exhaustion of Administrative Remedy Proceedings (R. Doc. 14) be denied as moot. It is further recommended that Defendants' Motion for Summary Judgment (R. Doc. 12) be denied and that Defendants' Motion to Dismiss (R. Doc. 9) be granted in part, dismissing Plaintiff's claims asserted against Defendants Ronald Boies, Clara Hodas and James Dulaney, with prejudice, dismissing Plaintiff's claims for injunctive relief, and dismissing Plaintiff's claims asserted against the remaining Defendants in their official capacities. It is further recommended that this matter be referred back to the Magistrate Judge for further proceedings.

Signed in Baton Rouge, Louisiana, on March 12, 2018.

*[signature]*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**