UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ERNEST MONTGOMERY (# 315014)**      **CIVIL ACTION**

**VERSUS**      **NO. 17-0210-SDD-EWD**

**KRISTEN THOMAS, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 14, 2019.

 

*[signature: Erin Wilder-Doomes]*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ERNEST MONTGOMERY (# 315014)**          **CIVIL ACTION**

**VERSUS**          **NO. 17-0210-SDD-EWD**

**KRISTEN THOMAS, ET AL.**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is a second Motion for Summary Judgment[1] ("Motion") filed on behalf of Defendants Kristen Thomas, Ernest Brown, Donald Johnson, and Chandra Jackson. For the following reasons, the undersigned recommends the Motion be granted.

**I. Background**

*Pro se* Plaintiff, an inmate confined at the Elayn Hunt Correctional Center ("EHCC"), St. Gabriel, Louisiana, originally filed this proceeding pursuant to 42 U.S.C. § 1983 against Social Worker Kristen Thomas, Social Worker James Dulaney, Major Brown, Program Manager Clara Hodas, Capt. Donald Johnson, Assistant Warden Ronald Boies and Lt. Jackson, alleging that Defendants violated his constitutional rights. Specifically, Plaintiff alleges that Defendants were deliberately indifferent to his health and safety on January 21, 2015 when they placed him in a suicide cell with a top bunk notwithstanding Plaintiff's request to be placed in a single bed cell. Plaintiff did ultimately jump from the top bunk and allegedly sustained injuries to his knees.[2] Plaintiff's claims against defendants James Dulaney, Clara Hodas, and Ronald Boies were dismissed with prejudice via a previously filed Motion to Dismiss.[3]

---

[1] R. Doc. 36.
[2] R. Doc. 1-1, p. 3.
[3] R. Doc. 9; R. Doc. 17; R. Doc. 19. Plaintiff's claims for injunctive relief and his claim against the remaining defendants in their official capacities were also dismissed with prejudice. R. Doc. 19.

2

## II. Law and Analysis

### A. Standard of Review

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[4] A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[5] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[6] This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[7] Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[8] Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.[9] In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party, and the court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[10]

---

[4] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[5] *Celotex Corp.*, 477 U.S. at 322.
[6] *Anderson*, 477 U.S. at 248.
[7] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[8] *Celotex Corp.*, 477 U.S. at 323.
[9] *Little*, 37 F.3d at 1075.
[10] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

### B. Deliberate Indifference

Prior to the incident in question, Plaintiff had a "pervasive history of severe self harm behavior and threats of suicide.[11] On the evening of January 21, 2015, Plaintiff was escorted to a suicide cell (cell #13) in the CBB tier in response to his assertion that he was feeling suicidal.[12] Plaintiff was placed on "standard suicide watch" [13] in a cell that had a double bunked bed.[14] It is undisputed that, in the early morning hours of January 22, 2015, Plaintiff jumped from the top bunk of the double bunked bed.[15] Plaintiff allegedly sustained injuries to his knees as a result of the incident.[16]

Based on the affidavit of Defendant Brown, it appears that on January 21, 2015, Plaintiff requested to a placed in a single bed cell instead of a double bunked cell on the suicide tier while in the presence of Defendants Jackson, Johnson, Thomas and Brown.[17] Defendants Brown, Johnson and Jackson assert that they "did not refuse to locate the plaintiff to a single bunked cell because of indifference or incompetence, but rather, based on a reasonable belief that they had reason to doubt or discount Plaintiff's assertions relative to likely impending harm."[18] Specifically, the evidence shows that Plaintiff has a history of committing aggravated sex offenses by exposing himself and/or masturbating in the presence of corrections officers and the only single

---

[11] R. Doc. 41-3, p. 1.
[12] R. Doc. 41-1, ¶4 and R. Doc. 36-2, ¶ 5.
[13] R. Doc. 47, p. 3, R. doc. 30, p. 1
[14] R. Doc. 36-2 p. 2.
[15] *Id.*
[16] R. Doc. 1-1, p. 3.
[17] R. Doc. 36-6 (p. 1 ("On January 21, 2015, I responded to a request for assistance from Lt. Chandra Jackson on the suicide tier in regards to an inmate named Ernest Montgomery. Captain Donald Johnson accompanied me, and the on-call Mental Health Worker Kristen Thomas also came to the scene shortly thereafter. Mr. Montgomery declared he was at risk for suicide, and asked to be placed in a single bed cell instead of a double bed cell on the suicide tier.")
[18] R. Doc. 36-2, p.2.

4

bunk cells in the suicide tier are located in an area with more access to corrections officers at the guard desk and interlock.[19]

In *Farmer v. Brennan*,[20] the Supreme Court explained that to be deliberately indifferent to an inmate's needs in violation of the Eighth Amendment, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Therefore, to avoid liability, "[p]rison officials charged with deliberate indifference might show ... that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent."[21] Furthermore, evidence that an official was aware of a substantial risk to inmate safety does not alone establish deliberate indifference. As the Supreme Court explained in *Farmer*, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."[22] The United States Court of Appeals for the Fifth Circuit has further observed that, "while ... the law is clearly established that jailers must take measures to prevent inmate suicides once they know of the suicide risk, we cannot say that the law is established with any clarity as to what those measures must be."[23] What is clear is that, even if an officer responds without the due care a reasonable person would use—such that the officer is only negligent—there will be no liability.[24]

---

[19] *Id. See also*, R. Doc. 36-4, pp. 1-8. Plaintiff does not dispute that he has a history of aggravated sex offenses (*see e.g.*, R. Doc. 39-1, pp. 2-3), although Plaintiff did file a motion to strike such evidence (R. Doc. 39), which was denied. R. Doc. 49.
[20] 511 U.S. 825, 837 (1994).
[21] *Id*. at 844.
[22] *Id*. at 844.
[23] *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 328-29 (5th Cir. 1998), quoting *Rellergert v. Cape Girardeau Cty.*, 924 F.2d 794, 797 (8th Cir. 1991).
[24] *See Davidson v. Cannon*, 474 U.S. 344, 347 (1986).

*Domino v. Texas Department of Criminal Justice*[25] is instructive. There, inmate Antoine Domino committed suicide.[26] Before his suicide, Mr. Domino met with a prison psychologist, who referred Mr. Domino to a prison psychiatrist.[27] During his meeting with the prison psychiatrist, Mr. Domino expressed apprehension regarding his upcoming transfer from administrative segregation to the general population and requested sleeping pills.[28] After the psychiatrist denied his request for sleeping pills, Mr. Domino stated, "I can be suicidal."[29] The treating psychiatrist did not believe Mr. Domino was a suicide risk at that time, despite his statement, and instead thought that Domino's statement was an attempt to achieve secondary gain, such as sedatives or a single cell.[30] At the close of the meeting, Mr. Domino began banging his head on the table, and the psychiatrist had guards take him back to his cell.[31] Two hours later, Mr. Domino committed suicide. Although Mr. Domino had a long history of psychological problems and suicide attempts, of which the psychiatrist was aware,[32] the Fifth Circuit reversed the district court's denial of summary judgment and remanded the case for entry of judgment in favor of the psychiatrist. In holding that summary judgment in favor of the psychiatrist was appropriate, the Fifth Circuit stated:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Furthermore, the decision whether to provide additional treatment "is a classic example of a

---

[25] 239 F.3d 752 (5th Cir. 2001).
[26] *Id.* at 753.
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Domino*, 239 F.3d at 753.
[32] *Id.*

6

> matter for medical judgment." And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference.
>
> Suicide is inherently difficult for anyone to predict, particularly in the depressing prison setting. [The psychiatrist] presented evidence that Domino had been a difficult, often uncooperative patient and concluded that Domino was threatening suicide to obtain secondary gain. He did not believe the threat was genuine. [The psychiatrist's] diagnosis was wrong. But, as stated above, an incorrect diagnosis does not amount to deliberate indifference.[33]

The Fifth Circuit recently reached a similar result in *Michael Young v. Sandy McCain, Warden*, et al.[34] In *Michael Young*, the plaintiff, an inmate, complained that prison personnel were deliberately indifferent to his medical needs by repeatedly downgrading him from extreme to standard suicide watch at times when he advised personnel that he was suicidal, which allowed him to harm himself by banging his head on a steel bed frame and the wall and by jumping from the toilet to the bed, exacerbating a previous shoulder injury.[35] The magistrate judge granted a motion to dismiss plaintiff's claims noting that "the selection of an appropriate suicide precaution level is a matter of professional judgment."[36] The Fifth Circuit agreed finding that the plaintiff's complaints were directed at the nature of the treatment and not the lack thereof.[37] The Fifth Circuit reasoned that an incorrect diagnosis regarding the genuineness of a suicide threat does not amount to deliberate indifference and further found that, at most, those responsible for caring for the plaintiff acted with gross negligence, which is insufficient to establish deliberate indifference.[38]

In the instant case, there is no dispute that Plaintiff was placed on standard suicide watch. As in *Domino* and *Michael Young*, the selection of this "suicide precaution level [was] a matter of

---

[33] *Id.*, 239 F.3d at 756 (citations omitted).
[34] Civ. Action No. 17-30521, 2019 WL 192411 (5th Cir. 2019).
[35] *Id.* at *1.
[36] *Id.* at *2.
[37] *Id.* at *3.
[38] *Id.* (citing *Doe v. United States*, 831 F.3d 309, 320 (5th Cir. 2016) and *Domino*, 239 F.3d at 754-56).

7

professional judgment," which does not amount to deliberate indifference.[39]  Further, even accepting as true Plaintiff's assertions that Plaintiff informed Defendants of his suicidal tendencies, his propensity for leaping off the top bunk to injure himself, and that he feared if left in his assigned cell he would, in fact, leap off the top bunk,[40] Plaintiff's claims still fall short of deliberate indifference. Defendants had reason to doubt the genuineness of Plaintiff's threat, namely the fact that Plaintiff's history suggests that he may have been seeking placement in a single-bunk cell in order to have a view of the guard station and interlock, which vantage point Plaintiff would use to commit Rule 21(E) aggravated sexual offenses.[41]  Under these facts, as in *Domino*, it was not unreasonable for prison personnel to conclude that Plaintiff was requesting a single bunk cell, not because of a genuine suicide concern, but because he was seeking to obtain "secondary gain."  This Court's prior ruling specifically stated that if the Defendants established that they had reason to doubt or discount Plaintiff's assertions relative to likely impending harm, summary judgment may be appropriate.[42] Here, Defendants have presented the Court with evidence establishing that EHCC personnel reasonably doubted Plaintiff's assertions on the evening in question; thus the burden falls on Plaintiff as the non-moving party to show that facts exist using which a jury could reasonably find in Plaintiff's favor.

In opposition to the Motion, Plaintiff submitted an affidavit signed by three other inmates attesting to the following:

> We have known Montgomery for years, and can surely witness to the fact that, he is a well known self mutilator, and have [sic]

---

[39] *Michael Young*, 2019 WL 192411 at *2. The Court also notes the medical records provided by Defendants in discovery are replete with treatment notes for Plaintiff, which notes indicate his complaints were consistently treated by prison personnel.[39]
[40] R. Doc. 36-1 ("Plaintiff asserts that he informed defendants that if he remained in a double bunked cell, that he might jump off the top bunk in an attempt to injure himself, and that he should be placed in a single bunk cell in order to avoid any attempt he might make to injure himself via throwing himself from the top bunk.")
[41] R. Doc. 36-6, pp. 1-2.
[42] R. Doc. 17, p. 13, adopted at R. Doc. 19.

8

>attempted suicide on numerous occasions at EHCC. We can also witness to the fact that, defendant's Thomas, Jackson, Johnson and Brown know of Montgomery's long history of harming himself.[43]

Plaintiff also submitted medical records cataloging numerous instances of self-harm, including several times when Plaintiff attempted to hang himself and instances where he cut himself.[44] In at least one instance of self-harm, Plaintiff swallowed a razor, and in another instance, he set fire to his paper gown.[45] Based upon the record, the only previous instance of Plaintiff harming himself by jumping from a top bunk was on March 4, 2014, nearly a year prior to the incident in question, when Plaintiff jumped off the top bunk of his cell multiple times resulting in ankle pain.[46]

The evidence submitted by Plaintiff does nothing more than further support the fact that Plaintiff has a history of suicide attempts and self-harm, just as did the inmates in *Domino* and *Michael Young*, which is insufficient to demonstrate that prison staff were deliberately indifferent to his medical needs by placing Plaintiff on standard suicide watch in a double bunked cell rather than in a single bed cell. Here, at worst, Defendants failed to perceive the risk to Plaintiff because they did not believe the threat was genuine. That Defendants were ultimately incorrect in their assessment is not enough to establish a claim for deliberate indifference.

Based on the foregoing evidence, there is no genuine issue of material fact as to whether the Defendants acted with deliberate indifference to Plaintiff's needs. Thus, it is recommended that summary judgment in favor of Defendants be granted.

---

[43] R. Doc. 41-2, p. 1.
[44] R. Doc. 39-2. In at least one instance where Plaintiff cut himself, he reported that he had done so, not to kill himself, but to rid his body of poison that had been put in his water and food. R. Doc. 39-2, p. 26.
[45] R. Doc. 39-2, pp. 20, 22.
[46] R. Doc. 39, p. 34.

## **RECOMMENDATION**

It is **RECOMMENDED** that Defendants Motion for Summary Judgment[47] be **GRANTED** and Plaintiff's action be **DISMISSED** with prejudice.

Signed in Baton Rouge, Louisiana, on February 14, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[47] R. Doc. 36.